Leo HECK, Plaintiff–Appellant,

v.

CITY OF FREEPORT and Mayor Richard Weis, Defendants–Appellees.

Nos. 91–3893, 91–3894.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1992.

Decided Jan. 29, 1993.

306

Michael K. Havrilesko (argued) and Ellen B. Lynch, Havrilesko & Associates, Rockford, IL, for plaintiff-appellant.

James T. Ferrini, John M. Hynes, Mark Seplak (argued), Clausen, Miller, Gorman, Caffrey & Witous, Chicago, IL, and Michael J. Phillips, Office of the Corp. Counsel, Freeport, IL, for defendants-appellees.

Before CUMMINGS, FLAUM, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Between 1986 and 1989, Leo Heck served as the General Inspector of the City of Freeport, Illinois. As set out in the Freeport Municipal Code, the General Inspector is a salaried position within the Health Department appointed by the mayor of Freeport with the approval of the City Council. The job involves the supervision of five garbage collectors and the city dump; the officer receives the use of a city car and parking space, and has his own office in city hall. Mayor Mark McLeRoy, the former five-term mayor of Freeport, appointed Heck to the post in January 1986, after the previous appointee decided to retire. Heck continued in the position until McLeRoy's successor picked a new General Inspector to replace him. This case arose because Heck complains that his termination was unfair.

During the 1989 mayoral campaign, Heck campaigned actively for his boss, who was the candidate of the People's Party, by distributing brochures, posting signs, and working the various precincts. Unfortunately for Heck, McLeRoy lost the race to Richard Weis, candidate of the Citizens Party. The new mayor took office on May 1, 1989. Over the next few days, Weis had several conversations with Heck in which, although the precise details of the conversations are disputed, Weis expressed general dissatisfaction with Heck's job perfor-

mance. On May 5, the interim corporation counsel for Freeport sent a letter thanking Heck for his service to the city and explaining that Mayor Weis planned to appoint a replacement:

> As you are most likely aware, when someone is appointed to the position of General Health Inspector, he holds that position until a successor is appointed. You may also know that it is the prerogative of the new Mayor to make such appointments, with the approval of the City Council, as he may deem appropriate and proper. This will notify you that it is the intention of the new Mayor to appoint a new General Health Inspector. This letter is written to you for the purpose of advising you of this fact, and of affording you the opportunity to tender your written resignation to the Mayor by May 31st, 1989.

Appellees' Brief app. D. Weis then selected Eric Gubelman as his nominee for General Inspector, who was subsequently confirmed by the City Council.

Heck brought two actions against Mayor Weis and the City of Freeport, the first alleging that he was the object of a "political patronage firing" in violation of his First Amendment rights, and the second alleging that his termination violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (1988), and also deprived him of his due process property and liberty rights. The district court granted summary judgment for the defendants on all four counts. We review summary judgment orders by the familiar test of whether all the pleadings and supporting documents indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). We conclude that summary judgment was properly granted in this case.

## I.

■ Before we can decide whether Weis' actions toward Heck violated any of his constitutional or statutory rights, we must evaluate Heck's legal status as a municipal employee at the end of Mayor McLeRoy's term. Two sets of authorities bear on this question—state law and municipal law. In each case, the relevant statute clearly indicates that the General Inspector's term of office ends when the mayor who appoints him loses his office. Chapter 47, § 103 of the Freeport Municipal Code provides:

> **Term of office.** Every appointive officer of the City shall hold office until his successor is appointed and qualified, unless it is otherwise provided by Statute or Ordinance. The term of every such officer shall automatically expire as soon after the end of the term of the appointing Mayor as the successor to such officer is appointed and qualified.

Freeport, Ill., Code ch. 47–103. The Illinois Code similarly provides:

> Unless otherwise specifically provided by statute, all officers of any city shall be appointed by the mayor by and with the advice and consent of the city council.... The city council, by ordinance not inconsistent with this Code, may prescribe ... the term of office of all such officers; but the term of office shall not exceed that of the mayor.

Ill.Ann.Stat. ch. 24, para. 3–7–2. (Smith–Hurd 1990).

■ On the basis of this evidence, the district court found that Mayor Weis did not fire Heck at all; Heck's term of office simply ended when Mayor McLeRoy, who had appointed him, lost his reelection bid. We agree with this conclusion. The purpose of the term-limitation rule embodied in the Freeport Code and the Illinois Code is to enable a newly-elected executive to assemble a team of officials whom he trusts to develop and carry out his agenda for the municipality. The rule gives effect to the democratic will of the electorate by allowing the public to sweep an administration out of office and elect a new set of leaders. Without such a rule, one municipal administration could make appointments that would bind its successor. In light of this powerful justification for limiting official terms to the tenure of the appointing executive, we have applied the rule even when

there is no statute that sets term limits. See *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1331 (7th Cir.1989) (Wisconsin law).

In the face of this convincing statutory authority, Heck tries to create doubt about the nature of his discharge by alleging that he was given inconsistent reasons for the termination. Heck acknowledges that the May 5 letter explained in clear terms that Mayor Weis intended to exercise his prerogative not to renew Heck's appointment, despite his contributions as an employee. But Heck complains that Weis stated in his deposition that Heck was fired because he failed to develop a comprehensive plan relating to recycling and composting. The defendants' answers to interrogatories, according to Heck, proposed a third reason why Heck was fired:

> Plaintiff was replaced because of his apparent inability and/or desire to carry out the functions of the position of General Inspector in the manner deemed necessary by Mayor Weis and Mayor Weis's necessity to have a person in the position who he would be confident could carry out the functions of this position in a manner which would further the goals and objectives of his administration.

Defendant's Answers to Interrogatories at 2. Finally, Heck points out that Freeport's compensation records list, as the reason for his termination, that he resigned.

None of these considerations changes the fact that Heck's term of office ended, by operation of law, when Mayor McLeRoy was succeeded. Nor, in fact, do we regard these explanations and accounts as suspiciously inconsistent. The letter of May 5 did not purport to give reasons for Heck's termination; it simply notified Heck that Mayor Weis would appoint a different General Inspector, and it invited him to submit his resignation. The explanation Weis gave during his deposition does not contradict this story, but rather fills in some of the details of Weis' concerns about Heck. The answer to the interrogatories supplements the letter in a similar fashion, by stating generally that Weis was unhappy with Heck's performance. Lastly, the notation in Freeport's compensation records,

although apparently incorrect, likely has an innocent explanation. We see no reason to view it as anything but a minor clerical error.

Given our conclusion that Heck's term of office ended when Mayor McLeRoy lost the mayoral race, our inquiry may appear to be at an end. If Heck's position expired by operation of state and municipal law, then he would seem to have no claim against Freeport for unlawful discharge. The Supreme Court, however, has frowned on arguments for limiting the ban on patronage practices to employees who possess some minimum property interest in their jobs. In *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the Court reiterated its decision that even employees at will without any right to continued employment are entitled to protection from patronage dismissals, *id.* at 72, 110 S.Ct. at 2735, and it expanded the set of banned practices from firings to virtually all employment decisions, including hirings. *Id.* at 79, 110 S.Ct. at 2739. In a footnote to the earlier case of *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Court rejected an argument, albeit tersely, that since an assistant public defender's term of office automatically expired when the public defender's term ended, the case involved only a "failure to reappoint" rather than a dismissal and thus deserved to be reviewed under "a less stringent standard." *See id.* at 512 n. 6, 100 S.Ct. at 1291 n. 6. We must therefore proceed to the merits of Heck's First Amendment claim.

■ The district court correctly found that *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), permitted patronage dismissals of officials holding policymaking positions. The Supreme Court refined the concept of a policymaking exemption in *Branti* by explaining that party affiliation could be a permissible criterion for discharge if it is "an appropriate requirement for the effective performance of the public office involved." *See Branti*, 445 U.S. at 518, 100 S.Ct. at 1294; *Rutan*, 497 U.S. at 71 n. 5, 110 S.Ct. at 2735 n. 5. We have further elaborated that "[t]he test

is whether the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Tomczak v. City of Chicago,* 765 F.2d 633, 641 (7th Cir.) (quoting *Nekolny v. Painter,* 653 F.2d 1164, 1170 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982)), *cert. denied,* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985).

In *Tomczak,* we held that *Elrod* required the district court to examine the "powers inherent in a given office," rather than the actual functions the occupant of that office performed. We explained that the reason for so limiting the inquiry was twofold: first, to relieve courts of the burden of reevaluating the nature of a position "every time a new administration changes the mix of responsibilities bestowed upon the officeholder"; and second, to provide certainty to litigants. *Id.* 765 F.2d at 641. The district court in this case considered the description of the office of General Inspector contained in the Freeport Municipal Code, which reads:

> **Duties of General Inspector.** The General Inspector shall make inspections and perform such duties as may be required of him, from time to time, by the Mayor, City Engineer or Health Commissioner, and perform such other duties as may be required by ordinance.

Freeport, Ill., Code ch. 30–114. The court concluded that this provision authorized Heck to make policy, and he was therefore not entitled to protection against politically motivated discharges.

On appeal, Heck repeats his argument that he exercised no policymaking power whatsoever by offering a laundry list of all the decisions he was *not* authorized to make as General Inspector. He contends that *Tomczak* does not apply because that case was sent to the jury rather than decided on summary judgment. Heck's contention is unsupportable. We have applied the *Tomczak* test repeatedly in the context of summary judgment. *See, e.g., Upton v. Thompson,* 930 F.2d 1209, 1214 (7th Cir. 1991) (reversing district court's denial of summary judgment to defendants and holding deputy sheriff position exempt), *cert. denied,* —— U.S. ——, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992); *Bicanic v. McDermott,* 867 F.2d 391, 394 (7th Cir.1989) (affirming entry of summary judgment against appointed city park and recreation coordinator).

Admittedly, determining the "powers inherent in a given office" à la *Tomczak,* apart from any concept of the tasks the office-holder actually performs, requires a feat of abstraction difficult under ordinary circumstances, but especially so when the legislation defining the office is brief and unspecific. Nevertheless, the structure of Freeport government provides some guidance for our determination. The Health Department is one of the ten primary departments into which the City of Freeport administration is organized. Despite some terminological dispute between the parties concerning whether Heck was "head" of the Health Department, it is agreed that he was the highest ranking employee in that department, and that he supervised the garbage pick-up for the city.[1] In addition to these functions, Heck was required to keep records of all departmental activities, *see* Freeport, Ill., Code ch. 30–115, file reports to the city council, *see id.* ch. 30–116, and he was authorized to make arrests for public health violations, *see id.* ch. 30–118. As we held in *Tomczak,* officials of any local governmental entity who are responsible for the provision of basic services like police and fire protection, as well as "quasi-utility functions" like water, garbage, and sewage services, occupy crucial positions of trust and accountability.

---

1. We are slightly troubled by the fact that Heck's actual duties—undisputed by the parties—do not perfectly match his official responsibilities under the Freeport Municipal Code. The section defining the position of General Inspector assigns to the Health Commissioner, rather than to the General Inspector, "general supervision over the City Dump and the landfill operation." Freeport., Ill., Code ch. 30–114. (It is unclear why the Health Commissioner's job is defined in the section entitled "Duties of the General Inspector".) This discrepancy, nevertheless, is not serious enough to change our decision.

Elections often turn on the success or failure of the incumbent to provide these services, and, as campaigns develop, the opposing sides put forth varying proposals about how best to provide services. While the ultimate goal of all sides might be the same, there is clearly room for principled disagreement in the development and implementation of plans to achieve that goal.

*Id.* at 641.

Most important is the fact that the General Inspector's term was limited to that of the mayor. If the rule limiting the terms of certain offices exists so that a mayor can staff those positions with people who share his views about municipal policy, then political affiliation would seem not merely a permissible, but actually a desirable criterion for those appointments. This factor alone distinguishes this case from *Cordero v. De Jesus–Mendez,* 867 F.2d 1 (1st Cir.1989) and *Vrdolyak v. City of Chicago,* 604 F.Supp. 1325 (N.D.Ill.1984), two cases Heck cites where courts held that political firings were inappropriate for certain governmental officials. We conclude that the district court properly found the position of General Inspector to be exempt from the ban on patronage dismissals.

■ Heck's ADEA claim fails for the same reasons as his patronage claim. The ADEA exempts certain public officials from its protections. The statute defines covered employees as follows:

The term "employee" means an individual employed by any employer except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office.

29 U.S.C. § 630(f) (1988). The district court stated that the General Inspector's term of office, combined with its role in the provision of city services, led it to conclude that the position fell within the § 630(f)

exemptions. We agree with this ruling. The reasons for exempting the office from the patronage ban apply with equal force to the requirements of the ADEA. *Cf. Lee v. Wojnaroski,* 751 F.Supp. 58, 63 (W.D.Pa. 1990) (holding that if a position falls within the policymaking exemption of the ADEA, it does the same under the *Elrod–Branti–Rutan* doctrine).

## II.

■ Heck contends that he had a property interest in continuing employment as General Inspector that entitled him to a hearing and to a vote by the City Council on his discharge. In support of this claim, Heck refers us to the provision for official removals in the Freeport Municipal Code.

**Removals.** The Mayor shall have the power to remove any officer appointed by him whenever, in his sole opinion, the interests of the City demand such removal, but he shall first report such removal to the Council at the first meeting after such removal. If the Council, by a two-thirds vote of all members ... disapproves of such removal, such officer shall thereupon be restored to the office.

Freeport, Ill., Code ch. 47–115. Heck also contends that it was the policy and practice of the city not to fire anyone without a warning and a hearing. He points out that Weis admitted in his deposition that he did not investigate Heck's performance and that he gave Heck no notice of the charges against him or an opportunity to be heard.

In *Shlay v. Montgomery,* 802 F.2d 918 (7th Cir.1986), we explained that property interests in the employment context arise in two ways: by an "independent source such as state law securing certain benefits," or by a "clearly implied promise of continued employment." Heck's claim clearly fails on the first prong. As we established above, Heck's term of office unequivocally ended when Mayor Weis was elected; Heck retained no property interest in his position. Chapter 47, § 115 of the Freeport Municipal Code is irrelevant for several reasons. As the district court correctly held, that section only pertains to removals during a term of office, not to reappointments by a succeeding mayor.

Even if chapter 47, § 115 were thought to create a property interest in most official positions, here it would be overridden by the more specific provisions of chapter 30, § 113, which state that the General Inspector "may be discharged at any time by the Mayor and City Council, *with or without cause.*" *Id.* at § 30–113 (emphasis added). We have also held that mere procedural rights, like those contained in chapter 47, § 115, do not of themselves give rise to property interests protected under the Fourteenth Amendment. *See Hadley v. County of Du Page,* 715 F.2d 1238 (7th Cir.1983), *cert. denied,* 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984).

Heck's claim also fails under the implied promise prong of *Shlay.* The origin of this species of property right was the decision in *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), where the Supreme Court held that "mutually explicit understandings that support [a] claim of entitlement" may give rise to a property interest in employment. *Id.* at 601, 92 S.Ct. at 2699. Unfortunately for Heck, the premise of *Sindermann* is that where no codified statute creates property rights, unwritten agreements may do so. Here, unlike *Sindermann,* the statutory scheme is not silent as to the existence of a property right; the Freeport Municipal Code and the Illinois Code make clear that Heck had no interest in continued employment after McLeRoy's defeat as mayor. We agree that "[t]o say that customs entirely contrary to a statute's meaning may stem from that statute would defy reason; only if consistent with official law may such practices create a property interest in one's job." *Batterton v. Texas General Land Office,* 783 F.2d 1220, 1224 (5th Cir.), *cert. denied,* 479 U.S. 914, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986); *see also Driggins v. City of Oklahoma City,* 954 F.2d 1511, 1515 (10th Cir.) (denying that mutually explicit understandings can give rise to a protected property interest in contraven-

tion of an express city charter provision), *cert. denied,* —— U.S. ——, 113 S.Ct. 129, 121 L.Ed.2d 84 (1992); *Baden v. Koch,* 638 F.2d 486, 492–93 (2d Cir.1980). We have also decided on several occasions that officials lack authority to vary the terms of municipal and state ordinances. *See Wolf,* 870 F.2d at 1334.[2]

 Heck finally argues that the district court erred in granting summary judgment on his liberty interest claim. He maintains that because of derogatory information supplied about him, he has been denied employment by eleven other cities. In his appellate brief, however, Heck identifies only one allegedly defamatory statement, namely Weis' deposition testimony that Heck was fired due to performance problems. That is not enough. Besides the fact that statements "made in the course of a judicial proceeding which did not commence until after petitioner had suffered the injury for which he seeks redress ... surely cannot provide retroactive support for his claim," *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Shlay,* 802 F.2d at 924, this statement falls far short of creating the kind of stigma that deprives a government employee of due process. As we have held on numerous occasions, "a mere charge of mismanagement is not enough to give rise to a liberty interest requiring a hearing." *Hadley v. County of Du Page,* 715 F.2d 1238, 1245 (7th Cir.1983); *Paige v. Harris,* 584 F.2d 178, 184 (7th Cir.1978). We hold that the district court correctly granted summary judgment on this claim.

### III.

For the foregoing reasons, the grant of summary judgment to Mayor Richard Weis and the City of Freeport is AFFIRMED.

---

**2.** In any event, Heck offers no evidence that there was a "custom or practice" in Freeport amounting to a "mutually explicit understanding" that city officials could not be removed for cause when a new administration took office. In support of this claim, Heck produces only Mayor McLeRoy's statement that for the previ-

ous 20 years the city followed the practice of giving one disciplinary warning before discharging any city official—testimony that is irrelevant to the present issue because, in fact, the same mayoral administration held office during those 20 years.