Ronald E. **PLEVA**, Plaintiff,

v.

John O. **NORQUIST**, et al., Defendants.

No. 98–C–202.

United States District Court, E.D. Wisconsin.

Jan. 22, 1999.

Thomas P. Lyons, Jennifer L. Sielaff, Cunningham & Lyons, Milwaukee, WI, for plaintiff.

Rudolph M. Konrad, Milwaukee City Attorney's Office, Milwaukee, WI, for defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

In 1997, Ronald Pleva lost his positions as chairman, member and administrative officer of the board of zoning appeals of the city of Milwaukee [the "board"]. He alleges that this was the product of a conspiracy among the defendants, and the circumstances surrounding the loss of his positions give rise to his claims for violation of 42 U.S.C. § 1983, age discrimination, breach of contract, tortious interference with contract, defamation, and statutory and common-law conspiracy under Wisconsin law.

Before the court is the defendants' motion to dismiss Mr. Pleva's amended complaint. In connection with that motion, the defendants also move to strike affidavits submitted by the plaintiff in support of his claims. Mr. Pleva moves the court, in the event the motion to dismiss is not denied, to convert it to a motion for summary judgment and to stay the proceedings in order to permit the taking of discovery.

## BACKGROUND

The facts set forth below are taken from the allegations of Mr. Pleva's amended complaint, which I must accept as true for the

purpose of deciding the defendants' motion to dismiss. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Some legal background is taken from a relevant city ordinance.

Mr. Pleva was a member and chairman of the board from 1975 to 1997. He became the board's administrative officer in 1988 and held that position until 1997. (am.compl.¶ 17.) The defendants include John Norquist, mayor of Milwaukee; William Christofferson, chief of staff to the mayor; Einar Tangen, a board member; Danny Iverson, a board member; Henry Szymanski, a board member; Kimberly Pratt, a city of Milwaukee employee; Nilsa Rosado–Jurkiewicz, a city of Milwaukee employee; the city of Milwaukee; and the board. (am.compl.¶¶ 4–12.) The defendants, acting in concert and under color of state law, brought about the removal of Mr. Pleva from the board. (am. compl. ¶¶ 13, 14 & 17.)

The mayor appoints members of the board, subject to approval by the city of Milwaukee common council [the "common council"]. A board member's term lasts for three years. Milwaukee, Wis., Code of Ordinances [hereafter "MCO"], § 295–59 (1997). In 1990, members of the common council advised the mayor that if he appointed someone to replace Mr. Pleva as a member of the board, that person would not receive confirmation from the common council. About seven years later, in 1997, members of the mayor's staff told Mr. Pleva that the mayor intended not to reappoint him to the board. After this, members of the common council told Mr. Pleva that they would not confirm his successor. This would allow Mr. Pleva to stay on the board as a holdover member despite the mayor's decision not to reappoint him. (am.compl.¶¶ 21–22, 24.)

At some unspecified time before he lost his positions, Mr. Pleva attended a meeting at the mayor's office at which real estate developers and other business persons were present. A table had been set up to collect campaign contributions. Mayor Norquist spoke to those present and told them that he would sometimes make the decisions of the board. (am.compl.¶ 23.)

On May 28, 1997, Mayor Norquist sent a letter to Mr. Pleva stating that he would not reappoint Mr. Pleva for another term. The letter was quoted the next day in a local newspaper article. The letter indicated that Mr. Pleva discouraged development in the city, did not get decisions to applicants within a reasonable amount of time, and that applicants were not treated with efficiency, fairness and courtesy. The mayor also stated that "I expect that a new chairman will bring [the board's] debate, decision-making process and votes into the public, rather than being conducted behind closed doors." (am. compl.¶ 24.)

When Mr. Pleva lost his status as chairman of the board, he no longer received the salary related to that position. (am. compl.¶ 25.) He remained a board member, despite Mayor Norquist's decision not to reappoint him, because the common council did not immediately confirm a successor. (am.compl.¶ 38.) Members of the common council determined that the salary Mr. Pleva received as chairman was actually intended to compensate Mr. Pleva for his duties as administrative officer. The mayor vetoed a decision by the common council to pay Mr. Pleva the same salary for his duties as administrative officer. (am.compl.¶ 25.)

On June 18, 1997, the board held a meeting at which board member Tangen requested that Mr. Pleva resign. He declined. No notice of this matter had been given on the board's agenda or before the meeting. At another meeting on June 19, 1997, Mr. Pleva was removed as administrative officer by vote of the board members. There was no notice of this matter on the agenda or otherwise. (am.compl.¶¶ 31–32.)

The mayor and members of his staff contacted board members and sought their support in removing Mr. Pleva from his positions as administrative officer and member of the board. Subsequently, board members refused to hold hearings until Mr. Pleva was no longer a member. As a result of these actions, common council members confirmed a successor to replace Mr. Pleva. (am. compl.37–38.)

As part of their effort to remove him, the defendants made a number of false state-

ments about Mr. Pleva—some spoken, some in the form of written memoranda and some published by the media. (am.compl.¶¶ 27–39.) These statements will be discussed in greater detail later in this opinion. In addition, Mr. Pleva was told that his removal was related to his age. Specifically, Mr. Christofferson told Mr. Pleva that "you don't want to spend the rest of your days doing this." (am. compl.¶¶ 35–36.)

Mr. Pleva's primary claim is that the defendants deprived him of his constitutional rights in violation of 42 U.S.C. § 1983. He claims that the defendants violated (1) his First Amendment rights by removing him for political reasons (Mayor Norquist); (2) his right to procedural due process by removing him without a sufficient notice or hearing (the mayor, Iverson, Szymanski, the board); (3) his right to equal protection of the laws by removing him based on personal animosity (the mayor); and (4) his right to substantive due process by interfering with the board's operations, damaging his reputation, and depriving him of his property interest in his salary (the mayor, Christofferson, staff of the mayor's office, Iverson, Szymanski and the board). Mr. Pleva also brings claims of age discrimination (the city, the board and possibly other defendants); breach of contract (the mayor, the city, the board); tortious interference with contract (Norquist, Christofferson, Pratt, Rosado–Jurkiewicz, staff of the mayor's office); defamation (the mayor, Christofferson, Rosado–Jurkiewicz, Pratt, Tangen); conspiracy to injure reputation under § 134.01, Wis.Stats. (all defendants); and civil conspiracy (all defendants).

### ANALYSIS

### I. Defendants' Motion to Strike Affidavits and Plaintiff's Motion to Stay Proceedings

In support of their motion to dismiss, the defendants rely upon several city ordinances and common council resolutions. These concern the appointment of chairpersons, members and administrative officers of the board and establish the salaries for these positions. Mr. Pleva contends that by relying upon the ordinances and resolutions, the defendants

referred to matters outside the pleadings in an effort to contradict facts alleged in the complaint, particularly the allegation that he was an employee of the city of Milwaukee. He responded to this in two ways. First, he submitted affidavits to "reaffirm and establish proof" of the facts alleged in his complaint. Second, he moved the court, in the event the motion to dismiss is not denied, to convert it to a motion for summary judgment and to stay the proceedings to permit discovery to take place.

■ The defendants request that the court strike the affidavits. The request will be granted. Affidavits are not necessary to the disposition of a motion under Rule 12(b)(6) because the facts alleged in the amended complaint are accepted as true. *See Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). There is no need to offer proof of those facts at this stage of the litigation—the affidavits are irrelevant to the question of whether the amended complaint states a claim upon which relief can be granted.

Mr. Pleva also repeats allegations in the affidavits throughout his briefs. The court will treat them, not as factual, but rather as arguments potentially relevant to the question of whether the plaintiff might be able to prove a set of facts that would entitle him to relief. *See Orthmann v. Apple River Campground, Inc.,* 757 F.2d 909, 914 (7th Cir. 1985).

■ With regard to the plaintiff's alternative motion to stay the proceedings under Rule 56(f), the court finds little merit in it. The plaintiffs rely upon the general rule that if the court considers matters outside the pleadings on a Rule 12(b)(6) motion, it must treat the motion as one for summary judgment and grant the parties time to submit the materials described in Rule 56. Fed. R.Civ .P. 12(b). However, there are exceptions to this rule. One of them is that the court may take judicial notice of matters of public record such as state statutes, city charters, and city ordinances. *Newcomb v. Brennan,* 558 F.2d 825, 829 (7th Cir.1977). Because the defendants' motion to dismiss relies only upon judicially noticeable ordi-

nances and resolutions, there is no need to convert it to a motion for summary judgment.

## II. The Defendants' Motion to Dismiss the Amended Complaint

Before turning to the defendants' dismissal arguments, I will attempt to clear up a semantic disagreement between the parties. Throughout his complaint and brief, Mr. Pleva states that the defendants "removed" him from the board, whereas the defendants emphasize that he was "not reappointed". Despite their disagreement over terms, the parties do not dispute the basic procedures by which Mr. Pleva was replaced. Prior to the expiration of his last three-year term in June 1997, the mayor decided not to reappoint him. Nevertheless, when his term as board member expired, Mr. Pleva remained a holdover member of the board until the common council confirmed his successor. He did, however, lose his status as chairman at this time because the mayor's selection of a chairman from the board members is not subject to common council confirmation. MCO § 295–59(2). On June 19, the board members voted to remove Mr. Pleva from his position as administrative officer (the ordinance authorizes the board members to select one of their number to perform these duties—MCO § 295–59(3)). After this, the only position that he held was that of holdover board member. Finally, in October, Mr. Pleva lost that position when the common council confirmed his successor.

In light of these facts, the court will use the term "removal" loosely to refer to the process by which Mr. Pleva was replaced. However, the court will remain mindful of the fact that he was not "removed" in the strict statutory sense of being forced to leave before his term as board member expired. *See* Wis.Stats. § 62.23(7)(e)(2).

## A. Violation of Mr. Pleva's First Amendment Rights

### 1. The policymaker exception

 Mr. Pleva alleges that Mayor Norquist violated his First Amendment rights by removing him for political reasons. Specifi-

cally, the reasons were Mr. Pleva's refusal to let politics influence his decisions, his unwillingness to take direction from the mayor's office regarding matters before the board, and Mayor Norquist's own political objectives. Ordinarily, the First Amendment protects government employees from dismissal or nonreappointment based on their political beliefs or affiliations. *Soderbeck v. Burnett County,* 752 F.2d 285, 288 (7th Cir.1985) (citing *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (nonreappointment) and *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). However, the rule has a significant exception. Squarely at issue in this case is whether Mr. Pleva falls within the "policymaker" exception, which permits a government agency to remove policymaking employees for political reasons. The premise behind the exception is that forcing a public official to retain his political adversaries as policymakers would unduly interfere with the operation of government. *Warzon v. Drew,* 60 F.3d 1234, 1239 (7th Cir.1995).

The defendants claim that Mr. Pleva was a policymaker, and on this basis move to dismiss his section 1983 claim to the extent it seeks to vindicate his First Amendment rights. The court of appeals for the seventh circuit has set forth the following standard for deciding this issue: "The test is whether the position held by the individual authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Nekolny v. Painter,* 653 F.2d 1164, 1170 (7th Cir.1981); *accord Warzon,* 60 F.3d at 1239.

The United States Supreme Court has cautioned against using the "policymaker" label uncritically, and has required the hiring authority to demonstrate that political beliefs have some connection to the effective performance of the job. *Branti,* 445 U.S. at 517, 100 S.Ct. 1287. One district court in this circuit, in harmonizing *Nekolny* and *Branti,* has noted that the question is not only whether the plaintiff had meaningful input into government decisionmaking, but also whether the plaintiff had "the type of discretion that can be used to thwart the [political]

goals of the incumbent administration." *Gannon v. Daley*, 561 F.Supp. 1377, 1383 (N.D.Ill.1983). *See also Grossart v. Dinaso*, 758 F.2d 1221, 1227 n. 4 (7th Cir.1985) (acknowledging, without accepting or rejecting, *Gannon's* addition of this implicit element to the *Nekolny* test).

The parties dispute whether the policymaker question is a legal or factual one. Although there is some indirect support for the defendants' contention that the question is a legal one, *see Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (noting in a different context that the question of whether a state official has "final policymaking authority" is a question of state law), the court of appeals for the seventh circuit, in a First Amendment case involving politically-motivated discharge, has flatly rejected the argument that the policymaker determination should always be a question of law. *Soderbeck*, 752 F.2d at 288–89. *See also Nekolny*, 653 F.2d at 1169. However, that court has not held that the question is always for a jury to decide. *See, e.g., Warzon*, 60 F.3d at 1239–40 (granting motion for judgment on the pleadings because the plaintiff could not prove facts consistent with the allegations in her complaint to support a finding that she was not a policymaker); *Hudson v. Burke*, 617 F.Supp. 1501, 1513 (N.D.Ill.1985) (noting that the question is not always factual, citing seventh circuit cases).

■ In the case at bar, I find that the statutes and ordinances that define a board member's powers clearly demonstrate that Mr. Pleva held a policymaking position. Because these policymaking powers are established by law, Mr. Pleva cannot prove any set of facts consistent with his complaint that would permit a finding that he was not a policymaker. *See Warzon*, 60 F.3d at 1240.

■ To determine whether an official is a policymaker, the court is to examine the "powers inherent in a given office", as opposed to the actual functions performed by such official. *Heck v. City of Freeport*, 985 F.2d 305, 309 (7th Cir.1993). The Wisconsin statute that authorizes the establishment of zoning boards of appeals defines the board's powers as follows: (1) to hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of zoning laws; (2) to hear and decide upon whether to grant special exceptions to the zoning ordinance "in harmony with its general purpose and intent"; (3) to authorize upon appeal in specific cases variances from the terms of the ordinance; and (4) to permit the erection of buildings for public utility purposes "in any location which is reasonably necessary for the public convenience and welfare." Wis.Stats. § 62.23(7)(e)(1) and (7).

The Wisconsin statute permits the board to grant variances

> from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions, a literal enforcement of the ordinance will result in practical difficulty or unnecessary hardship, so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done. *Id.*

The Milwaukee zoning ordinance grants similar powers to the board. MCO § 295–59.

It is self-evident from the statute and ordinance that the legislature and common council have delegated broad power and substantial discretion to the board. The statute by its terms required Mr. Pleva, in casting his votes, to consider broad policy issues, such as the public interest and welfare, substantial justice and the general purposes of the zoning ordinance. These are clearly not ministerial duties. By voting on the issues that came before the board, Mr. Pleva had direct, meaningful input into government decision-making on issues where there is room for principled disagreement on goals or their implementation. In short, he had policymaking powers. *Nekolny*, 653 F.2d at 1170.

I also believe, assuming that the additional element set forth in *Gannon* applies, that Mr. Pleva exercised the type of discretion that might be used to thwart the political goals of the mayor. 561 F.Supp. at 1383. For example, the mayor could have been elected in part because he favored extensive real estate development within the city's

boundaries. Hypothetically, a board member such as Mr. Pleva could discourage development, in cases where there is room for disagreement, by repeatedly voting to deny variances or special exceptions to would-be developers.

The plaintiff's contentions that he was not a policymaker are unpersuasive. Mr. Pleva points out that his votes were not determinative as he was one of five board members. I believe that to be irrelevant. As the court observed in *Warzon*, that a plaintiff's "recommendations did not ultimately carry the day has no bearing; the relevant inquiry is input, not absolute control." 60 F.3d at 1240. Mr. Pleva's argument that the board's powers are limited by statute and ordinance fails for the same reason. If it were necessary to show an absence of statutory constraints on power in order to qualify for the policymaker exception, the exception would be practically nonexistent. Mr. Pleva's arguments ignore the *Nekolny* test.

Because I conclude that Mr. Pleva exercised policymaking authority as a board member, it is not necessary to address his arguments that his duties as chairman and administrative officer did not involve policymaking. A person must first be a board member before becoming a chairman or administrative officer. MCO § 295–59. His removal from the latter two positions necessarily followed his loss of board member status.

2. Does the policymaker exception apply in this case?

Having decided that Mr. Pleva is a policymaker, the court must determine what effect this has upon his claim. In the First Amendment cases discussed above, a finding that a plaintiff was a policymaker has resulted in dismissal of that plaintiff's claim. The court of appeals for the seventh circuit has categorically stated that "[o]nce the employee is classified as ... policymaking, he can be fired on political grounds even if there is no evidence that he would not serve his political superiors loyally and competently." *Warzon,* 60 F.3d at 1238 (quoting *Wilbur v.. Mahan,* 3 F.3d 214, 218 (7th Cir.1993)).

In this case, however, there remains a debatable issue regarding what types of "political grounds" for removing a policymaker are legitimate. Mr. Pleva was a voting member of a quasi-judicial municipal board. His amended complaint could be construed to allege (although the allegation is barely sufficient) that he was not reappointed partly in retaliation for his votes in specific cases. The amended complaint states that Mr. Pleva was removed "in substantial part because Pleva was not amenable to direction from the Mayor's office relative to the disposition of [board] matters." (am.compl.¶ 53.)

Although the issue is not fully discussed by the parties, this allegation could affect whether Mr. Pleva's policymaker status is a defense to his First Amendment claims. Cases from this circuit establish that political affiliation, political beliefs and the expression of political views can be legitimate political grounds for removing a policymaker. *See, e.g., Soderbeck,* 752 F.2d at 288 (political affiliation); *Warzon,* 60 F.3d at 1239 (expression of political views). However, the parties do not cite, nor has the court found, any cases from this circuit involving the removal of a municipal board member based on his votes. Two cases from the court of appeals for the first circuit hold that firing members of a municipal board based on their votes would be a violation of their First Amendment rights. *Stella v. Kelley,* 63 F.3d 71, 75–76 (1st Cir.1995) ("[I]t is beyond serious question that votes cast by the members of municipal boards are ordinarily entitled to First Amendment protection"); *Miller v. Town of Hull,* 878 F.2d 523, 532 (1st Cir. 1989) (same conclusion, noting that "this is especially true when the agency members are elected officials.").

In *Stella,* the court did not consider whether the policymaker exception was a defense to the plaintiffs' claims. In *Miller,* the court acknowledged the policymaker exception but held that it was inapplicable, mainly because under the Massachusetts removal statute, the plaintiffs, elected members of a town "redevelopment authority", could not be fired because they disagreed with the defendants on matters of town policy. 878 F.2d at 532 n. 13. Under the statute, the plaintiffs in *Mil-*

*ler* could be fired only for inefficiency, neglect or misconduct in office. *Id.* at 525. Similarly, the plaintiffs in *Stella*, who were appointed members of a zoning board of appeals, could be removed prior to the expiration of their terms only for cause. 63 F.3d at 72.

I believe that there is a major distinction between the case at bar and *Stella* and *Miller* which suggests that the policymaker exception does apply to the circumstances in the instant case. Mr. Pleva, unlike the plaintiffs in *Stella* and *Miller*, was not discharged in alleged violation of the statute governing removal of board members. Mr. Pleva was not fired. Instead, after Mr. Pleva's term expired, Mayor Norquist appointed someone else. There is nothing in the relevant statutes and ordinances that prohibits the mayor from doing this. To the contrary, the applicable laws enable the mayor to appoint the board's members every three years and to designate a chairman at any time. Wis. Stats. § 62.23(7)(e)(2); MCO § 295–59(2). Thus, whereas the plaintiffs in *Stella* and *Miller* were removed for their votes in violation of state law, Mr. Pleva's nonreappointment was consistent with the legislatively-mandated political process.

This distinction is significant for at least two reasons. First, the only concrete reason that the court in *Miller* gave for not applying the policymaker exception—that firing the plaintiffs based on their votes was impermissible under state law—is inapplicable here. I cannot think of a reason, absent circumstances like those present in *Miller* and *Stella*, why policymakers who express their political views by voting must receive protection from removal while policymakers who express their political views in other ways do not. Creating such a dichotomy, without defining a limiting principle, could abrogate the firmly established policymaker exception in a potentially large number of cases.

Second, extending the holding in *Miller* to the circumstances in this case could have harmful consequences for the local political and electoral process. For example, a majority of voters, dissatisfied with the board's decisions in several controversial cases, might decide to elect a new mayor based on his promise that he would appoint new board members when the incumbents' terms expired. This scenario, which the legislature seems to have foreseen (*see* Wis.Stats. § 62.23(7)(e)(2)), would subject the new mayor to civil liability upon carrying out his electoral mandate. If this court made nonreappointment based on a member's votes illegal under the First Amendment, then it would make the board unaccountable to the public for its decisions. This would be akin to extending article III tenure protection (*i.e.* appointment for life, removal only for misconduct) to board members, a protection that does not even extend to the judges in Wisconsin's state courts.

It is sometimes the case in politics that elected or appointed officials lose their jobs even though they performed competently and in strict compliance with the law. For example, a well-known criticism of selecting state judges through elections is that a judge might lose his job precisely because he correctly applied the law and it led to an unpopular result. This type of political outcome may be unfair in some cases, but it cannot be remedied by the federal courts in the absence of a constitutional violation. In sum, I conclude that Mr. Pleva's policymaker status permitted the mayor to decide not to reappoint him for political reasons. These political reasons can include disagreement over Mr. Pleva's votes in particular cases. *See Rash–Aldridge v. Ramirez*, 96 F.3d 117, 118–20 (5th Cir.1996) (board member appointed by city council could be fired by council based on her stated intention to vote contrary to its wishes). Accordingly, the court will dismiss Mr. Pleva's section 1983 claim to the extent it is based on his First Amendment rights.

**B. Violation of Mr. Pleva's Right to Procedural Due Process**

Part of Mr. Pleva's section 1983 claim is premised on his charge that he was deprived of property and liberty interests without a constitutionally sufficient notice and hearing, in violation of his right to procedural due process under the Fourteenth Amendment. *See Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

### 1. Property interest

■ To state a claim for deprivation of property without due process, a claimant must allege that he was deprived of a property right. *Id.* In the context of procedural due process claims, "property is what is securely and durably yours under state ... law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain". *Reed v. Village of Shorewood,* 704 F.2d 943, 948 (7th Cir.1983); *accord Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ Mr. Pleva has not pled any facts to support a claim that he had a property right in any of his positions on the board. As the defendants point out, the statute and ordinance create no right to reappointment as a board member, nor do they establish any entitlement to continuing status as chairman or administrative officer. Wis.Stats. § 62.23(7)(e)(2); MCO § 295–59(2) & (3). Mr. Pleva contends that a property interest was created when members of the common council assured him that they would not confirm his successor. However, the members of the common council lacked authority to bargain away their confirmation power, and they could not vary the statute and ordinance governing the terms of Mr. Pleva's appointment. *See Hadley v. County of DuPage,* 715 F.2d 1238, 1242 (7th Cir.1983) (no property interest arises from unauthorized statements of county board members who could not bind county to contract). Mr. Pleva's claim of entitlement amounts to a unilateral expectation, not a property interest. *See id.* Accordingly, the court will dismiss the plaintiff's claim based on the alleged deprivation of property without procedural due process.

### 2. Liberty interest

■ Mr. Pleva also claims that the defendants, without providing him with a sufficient notice or hearing, deprived him of his interest in liberty by making defamatory comments about him. Although defamation by a state official does not by itself involve a deprivation of liberty, *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), defamation coupled with a decision

not to rehire may in some cases form the basis for a liberty-interest claim. *Id.* at 709–10, 96 S.Ct. 1155 (discussing *Bd. of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). In interpreting *Davis,* the court of appeals for the seventh circuit stated:

> stigma to reputation (not itself a deprivation of liberty as defined in the Fourteenth Amendment) plus failure to rehire or discharge (not necessarily involving deprivation of property as defined in the Fourteenth Amendment) may nevertheless when found in conjunction state a claim ... for deprivation of a Fourteenth Amendment liberty interest without due process.

*Colaizzi v. Walker,* 542 F.2d 969, 973 (7th Cir.1976), *cert. denied,* 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977). This is called the "stigma plus" test. *Hadley v. County of DuPage,* 715 F.2d 1238, 1246 (7th Cir.1983). The court will assume that the "plus" aspect of the test is present here, since the alleged statements were made in connection with a decision to remove or not reappoint him.

■ The question, then, is whether the statements alleged create the type of stigma that would infringe upon Mr. Pleva's liberty interest. Included within the concept of a public employee's liberty interest is (1) the protection of his good name, reputation, honor and integrity, and (2) his freedom to take advantage of other employment opportunities. *Roth,* 408 U.S. at 573–74, 92 S.Ct. 2701. Even in the "stigma-plus" context, defamation is not synonymous with the deprivation of a liberty interest. *See Lipp v. Bd. of Educ. of the City of Chicago,* 470 F.2d 802, 805 (7th Cir.1972) (Not every remark that affects one's reputation violates due process if made by a government official without a hearing). The Fourteenth Amendment protects only against statements that " 'might seriously damage [one's] standing and associations in his community.' " *Id.* (quoting *Roth,* 408 U.S. at 573, 92 S.Ct. 2701). Similarly, not every negative effect upon one's attractiveness to future employers violates due process if it results without a hearing. *Id.*

Examples of the type of charges serious enough to implicate an employee's liberty interest include dishonesty, immorality, disloyalty, Communism, subversive activities, alcoholism or criminal violations. *Hadley,* 715 F.2d at 1245. The court of appeals for the seventh circuit has held that charges of mismanagement, poor performance or less serious misconduct are not grave enough. *Id.; Heck v. City of Freeport,* 985 F.2d 305, 311 (7th Cir.1993).

■ Accepting Mr. Pleva's allegations as true, whether the defendants' statements deprived him of his interest in liberty presents a closer call than the typical case. According to the amended complaint, one or more of the defendants made the following false statements about the plaintiff:

1) He discouraged development; did not get decisions to applicants within a reasonable time; did not treat applicants with efficiency, fairness and courtesy; and conducted meetings "behind closed doors";

2) He said that old, open files should be boxed up and put in the basement;

3) When told that forms were being altered after notarization, he did not " 'seem to feel that this was a problem' " (am. compl. ¶ 100, quoting defendant Pratt) and did not take action;

4) There was or should be an investigation of his actions;

5) The common council's effort to preserve his salary was "the worst type of City Hall cronyism you can imagine" and was "about people taking care of their friends" (am. compl. ¶ 92, quoting defendant Christofferson);

6) He and common council President John Kalwitz were "thick as thieves" and they go "drinking several nights a week" together (am. compl. ¶ 92, quoting defendant Christofferson); and

7) Mayor Norquist intended to allege violations of the open meetings law against Mr. Pleva.

The first through fourth groups of statements are charges of mismanagement. One or two of these, read in the light most favorable to the plaintiff, might also suggest something slightly more serious (more on this below). The fifth group of statements, regarding cronyism and "people taking care of their friends", criticizes the common council and was not offered as a reason for removing Mr. Pleva. As to the statements in number six above, to say that two people are "thick as thieves" does not suggest immorality, dishonesty or even impropriety. Neither does saying that they go drinking together. Statement number seven can be construed as accusing the plaintiff of violating the open meetings law. However, even assuming such an accusation is serious enough to support a liberty-interest claim, Mr. Pleva alleges that the Milwaukee County corporation counsel concluded that the mayor's charge was without merit and that a subsequent court case involving the allegations was dismissed. This outcome makes it unlikely that the charge could cause serious damage to the plaintiff's reputation.

Taken as a whole and construed in the light most favorable to the plaintiff, these statements at most tilt only very slightly beyond a "mere mismanagement" charge. In my opinion, the statements fall short of the type of serious charge of dishonesty, immorality or criminality that typically give rise to a right to a hearing. *See, e.g., McMath v. City of Gary,* 976 F.2d 1026, 1032 (7th Cir.1992) (defendants stated that plaintiff either participated or condoned criminal activity). I conclude that the statements recited above, considered singly or combined, are not serious enough to implicate Mr. Pleva's liberty interest. A comparison of the facts in this case to those in other cases from this circuit supports this conclusion. *See, e.g., Adams v. Walker,* 492 F.2d 1003, 1008 (7th Cir.1974) (no violation of liberty interest because defendant's "unelaborated charge of 'incompetence, neglect of duty and malfeasance of office' [was] of a different order of magnitude than charges of dishonesty, immorality, disloyalty, Communism, subversive activities, alcoholism or narcotics violations."); *Jeffries v. Turkey Run Consol. Sch. Dist.,* 492 F.2d 1, 2–3 (7th Cir.1974) (charge of "highly unethical conduct in [the plaintiff's] relationships with a fellow staff member" was not sufficiently stigmatizing). *Cf. Colaizzi v. Walker,* 812 F.2d 304, 306, 309–10 (7th Cir.

1987) (defendant governor, who fired and publicly charged plaintiffs with wrongdoing and abuse of power, did not violate any clearly established liberty interest and therefore prevailed on immunity grounds). Mr. Pleva has not cited any cases in which statements similar to those made by the defendants gave rise to a liberty-interest claim. The facts in the foregoing cases suggest that graver charges are required. Accordingly, I hold that Mr. Pleva was not entitled to notice or a hearing because the defendants' statements did not deprive him of his interest in liberty.

### C. Violation of Mr. Pleva's Right to Substantive Due Process

For the reasons discussed previously, Mr. Pleva's substantive due process claims based on his First Amendment rights and his interest in liberty will be dismissed. His remaining claim—that the defendants violated his right to substantive due process by interfering with and influencing the operations of the board—must also be dismissed. Mr. Pleva does not explain how interference with the board violated any of his substantive due process rights independent of those discussed above.

### D. Violation of Mr. Pleva's Right to Equal Protection

■ Relying on *Esmail v. Macrane*, 53 F.3d 176 (7th Cir.1995), Mr. Pleva claims that Mayor Norquist violated his right to equal protection of the laws by removing him by reason of personal animosity. In *Esmail*, the defendant mayor allegedly ordered the revocation of the plaintiff's liquor license out of personal animosity, while maintaining a policy of routinely granting licenses to applicants who had engaged in similar conduct. *Id.* at 178. The court held that the plaintiff had stated an equal protection claim. *Id.* at 179–80. For the reasons expressed below, I believe that the facts in *Esmail* are remote from those alleged by Mr. Pleva, and the result in that case is not warranted here.

Unlike the plaintiff in *Esmail*, Mr. Pleva has not even alleged that he was treated differently from similarly situated persons. For this reason, he has failed to state an equal protection claim. *Penterman v. Wis-*

*consin Elec. Power Co.*, 211 Wis.2d 458, 484–85, 565 N.W.2d 521, 534–35 (Wis.1997) (distinguishing *Esmail* for the same reason and affirming dismissal of equal protection claim); *Albright v. Oliver*, 975 F.2d 343, 348 (7th Cir.1992), *aff'd*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

The plaintiff makes the unsupported contention that *Esmail* extends to an elected official's choice of policymaking appointees. Accepting this argument would unduly interfere with the effective functioning of government. In the First Amendment context, this concern prevents elected officials from being forced to retain their political adversaries as policymakers. *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir.1995). The same concern led the court in *Farr v. Gruber*, 950 F.2d 399 (7th Cir.1991), to conclude that elected officials may dismiss appointees based on personal enmity without facing tort liability under Wisconsin law. *Id.* at 402–03 (noting that "a personal falling out will not long endure without political consequences" and that "voters and not judges must administer the penalty for giving excessive weight to personalities in politics"). To the extent that Mr. Pleva has any cognizable equal protection right in this case, it must, for the same reasons discussed in *Warzon* and *Farr*, yield to the overriding interest in the effective functioning of the political process.

### E. Age Discrimination

■ Mr. Pleva's federal claim under the Age Discrimination in Employment Act ["ADEA"] fails for the same reason as his First Amendment claim. Policymaking appointees chosen by elected officials are not protected by the ADEA. 29 U.S.C. § 630(f) (1999); *Heck v. City of Freeport*, 985 F.2d 305, 310 (7th Cir.1993). The conclusion that Mr. Pleva is a policymaker for First Amendment purposes warrants the same conclusion with respect to his ADEA claim. *See id.*

### F. Supplemental Jurisdiction over Remaining State Law Claims

As discussed in the foregoing sections, all of Mr. Pleva's claims under federal law must be dismissed. His remaining claims are brought pursuant to Wisconsin law. Conse-

quently, the court must decide whether it should relinquish jurisdiction over the remaining claims. Although the parties have not discussed this question in their briefs, the record is sufficient to enable the proper disposition of the issue.

A district court may decline to exercise supplemental jurisdiction over a pendent state-law claim when it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The court has broad discretion to do so. *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 728 (7th Cir.1998). As a general rule, courts should relinquish jurisdiction over pendent state-law claims when all federal claims are dismissed prior to trial. *Id.* at 727. This is especially true when the remaining claims raise difficult or novel issues of state law, since the interest in comity favors resolution of such issues by state courts, which may well be more capable of accurately deciding them. *See Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 704 (7th Cir.1998). On the other hand, when a state-law claim is clearly without merit, it makes sense to retain supplemental jurisdiction in order to dismiss it, since doing so offends no state interest and spares overburdened state courts additional work. *Coe v. County of Cook*, 162 F.3d 491, 1998 WL 839090, at *5 (7th Cir. Dec.4, 1998).

In keeping with these principles, I will dismiss Mr. Pleva's claims for breach of contract and tortious interference with contract because they are clearly devoid of merit. These claims must be dismissed because he has not alleged any facts establishing the existence of a contract between him and any of the defendants. According to Mr. Pleva, when the common council and its members assured him and the mayor that they would not confirm his successor, an implied contract was created. This contention is wrong. The terms of Mr. Pleva's appointment were governed by statute and ordinance. The statements relied on by the plaintiff could not vary the terms of the statute and ordinance. *See Heck v. City of Freeport*, 985 F.2d at 311.

The court will decline to exercise jurisdiction over the plaintiff's remaining state-law claims for defamation, statutory conspiracy and civil conspiracy because they are not obviously totally lacking in merit, and it appears that they may raise some novel issues of state law. *See Centres, Inc.*, 148 F.3d at 704.

## CONCLUSION

Therefore, IT IS ORDERED that the defendants' motion to strike the affidavits of Ronald E. Pleva and Ted E. Wedemeyer, Jr. be and hereby is granted.

IT IS ALSO ORDERED that the plaintiff's motion in the alternative to stay proceedings be and hereby is denied.

IT IS FURTHER ORDERED that the defendants' motion to dismiss the amended complaint be and hereby is granted in part and dismissed in part as follows:

a) the plaintiff's claim for violation of 42 U.S.C. § 1983 (count I) is dismissed without prejudice;

b) the plaintiff's claim for violation of the Age Discrimination in Employment Act (count II) is dismissed without prejudice;

c) the plaintiff's claim for breach of contract (count III) is dismissed without prejudice;

d) the plaintiff's claim for tortious interference with contract (count IV) is dismissed without prejudice; and

e) the defendants' motion to dismiss the amended complaint is dismissed as moot as to the plaintiff's remaining state-law claims (counts V–VII).

IT IS FURTHER ORDERED that having dismissed all claims over which it has original jurisdiction, the court declines to exercise jurisdiction over the state-law claims recited in counts V–VII pursuant to 28 U.S.C. § 1367(c)(3).

IT IS FURTHER ORDERED that the defendants are entitled to their costs in connection with these motions.

IT IS FURTHER ORDERED that this action be and hereby is dismissed without prejudice.