In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2862

RAY HANANIA and ALISON RESNICK,

Plaintiffs-Appellants,

v.

BETTY LOREN-MALTESE, individually and
in her official capacity as president
of the Town of Cicero,
TOWN OF CICERO, THE CICERO TOWN NEWS, CICERO
TOWN REPUBLICAN ORGANIZATION, THE CICERO
OBSERVER, BOARD OF TRUSTEES MICHAEL FREDERICK,
RUPERTO ALEJANDRO, MOISES ZAYAS, JOHN KOCIOLKO,
JOSEPH VIRRUSO, RICHARD SMETANA, and JANET
POROD, individually and in their official
capacities, JEROME TORSHEN, and TORSHEN,
SPREYER, GARMISA & SLOBIG, LTD.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern District.
No. 98 C 5232--James B. Moran, Judge.

Argued March 28, 2000--Decided May 5, 2000

   Before EASTERBROOK, MANION, and EVANS, Circuit
Judges.

   EVANS, Circuit Judge.  This case marks another
chapter in the colorful history of Cicero, a
western Chicago suburb where Al Capone once set
up shop and where more recent political
shenanigans have been keeping federal
investigators and attorneys busy.

   Leading off this tale's cast of characters is
Betty Loren-Maltese, president since 1993 of the
Town of Cicero and the widow of Frank Maltese, a
prominent Cicero politician who confessed to
being a mob bookmaker and pleaded guilty to a
federal gambling charge. See United States v.
Maltese, 1993 WL 222350 (N.D. Ill. 1993). Loren-
Maltese is a defendant in this civil case, along
with the town itself, some affiliated officials
and organizations, and Chicago attorney Jerome H.
Torshen and his law firm, Torshen, Spreyer,
Garmisa & Slobig, Ltd. The plaintiffs are two ex-
employees of the town: Alison Resnick and her

husband, Ray Hanania. Resnick was appointed the town collector in February 1996, replacing her father, Gerald Resnick, who held the position for 26 years before being nabbed in the government's "Silver Shovel" public corruption probe. Hanania/1 is a former reporter for the Chicago Sun-Times who served as the town spokesman from 1993 to 1996.

Taking all facts alleged in the complaint to be true, as we must do at this time (without, of course, vouching for their accuracy), Loren-Maltese fired Hanania in October 1996 when he refused to defend her in the press against charges of rampant corruption. Resnick also made noise about corruption, requesting the State's attorney to investigate and helping to organize an opposition slate of candidates that ran unsuccessfully against Loren-Maltese in the February 1997 Republican primary. Loren-Maltese is not the sort of lady you want to cross, and Resnick paid the price. Loren-Maltese stripped the town collector's office of authority and employees, exiled the office to shabby quarters, denied Resnick access to her files, and refused to accept the monthly statements Resnick was required to file.

In June 1997 Loren-Maltese took away two of Resnick's last three employees. This, for Resnick, was the last straw. She hired Torshen, who helped her get a temporary restraining order in state court that stopped Loren-Maltese from impeding Resnick's duties. The order also reinstated two of Resnick's employees. With the TRO in place (it was even extended) the case moved forward but, on Torshen's recommendation, Resnick signed a settlement agreement in August in which she agreed to let it drop. The attorneys Cicero retained to work out this agreement were Merrick Rayle and Edward "Fast Eddie" Vrdolyak, the former aldermanic nemesis and failed electoral opponent of the late Chicago mayor, Harold Washington. Incredibly, the Resnick-Cicero settlement called for Cicero to refer some of its future legal work to Torshen--and Torshen has since represented Rayle in a lawsuit filed against Cicero by the town's former police chief and his deputy.

There was a period of detente between Resnick and Loren-Maltese, but in December 1997 the Cicero board of trustees sacked Resnick with three weeks to go in her term. Resnick called Torshen, who by this time was happily representing Cicero in other matters. He finagled two weeks of vacation time for Resnick and persuaded her to leave it at that.

Or so he thought. Resnick and Hanania later

filed a 42 U.S.C. sec. 1983 suit in federal court against Torshen, his law firm, Loren-Maltese, the Town of Cicero, and others. The lawsuit claims that the defendants deprived Resnick and Hanania of their constitutional right to speech by firing them in retaliation for speaking out about corruption. Torshen was named as a defendant on the theory that he was in cahoots with the Cicero officials when he convinced Resnick to sign off on a settlement that was not in her interests. Judge James B. Moran let Resnick and Hanania proceed with their suit against the rest of this crowd but dismissed the claims against Torshen and his law firm. Resnick and Hanania now appeal the decision that let Torshen off the hook.

A complaint is properly dismissed under Federal Rule of Civil Procedure 12(b)(6) if, taking all facts alleged by the plaintiffs to be true and construing all inferences in favor of the plaintiffs, the plaintiffs have failed to state a claim upon which relief can be granted. Pleva v. Norquist, 195 F.3d 905, 911 (7th Cir. 1999). And this complaint is full of so many mushy "facts" ("it was widely believed" . . . "it was widely rumored that") that Judge Moran shrewdly branded it "an exercise in investigative journalism." Nevertheless, we review its dismissal de novo. Id.

A cause of action under sec. 1983 requires a plaintiff to demonstrate that he was deprived of a right secured by the Constitution or a federal law at the hand of someone acting under color of law. Fries v. Helsper, 146 F.3d 452, 457 (7th Cir.), cert. denied, 525 U.S. 930 (1998). A private individual has acted under color of law if there was a concerted effort between the individual and a state actor. Id. Establishing sec. 1983 liability through a conspiracy theory requires a plaintiff to demonstrate that (1) the private individual and a state official reached an understanding to deprive the plaintiff of her constitutional rights and (2) the private individual was a willful participant in joint activity with the state or its agents. Id. We turn, then, to the question of whether the allegations in this complaint are sufficient to demonstrate, even at the notice pleading stage, that a conspiracy, involving Torshen, was afoot. See Ryan v. Mary Immaculate Queen Center, 188 F.3d 857 (7th Cir. 1999).

Why Resnick, who certainly is no idiot, signed a settlement agreement that she claims achieved nothing for her is anybody's guess, but sign it she did. The agreement contained six provisions:

1. Resnick would drop her case.

2. "Plaintiff shall serve out her Term as Town Collector through December 31, 1997. She shall come to work and Board Meetings as appropriate and assist in the transition of her elected successor, whose Term commences January 1, 1998. She shall perform all of the duties and functions of her appointive Office."

3. Resnick would not file any new suits arising out of the claims in this case.

4. The agreement would be confidential.

5. Cicero would refer to Torshen's law firm the town's defense in a pending personal injury case.

6. Resnick would try to persuade her husband, Hanania, to stop publicly slamming Cicero and its officials.

Cicero's promise to hire Torshen--who at the time was representing Resnick, Cicero's adversary in this litigation--for future legal work strikes us as highly unusual. Settlement agreements sometimes provide for one side to pay the other side's attorneys fees, but a settlement like this in which one side essentially hires the other side's lawyer is new to us. Whether it violates the duty of loyalty an attorney owes to the best interests of his client is not for us to say, but it should make one a little queasy (see Preamble to the Illinois Rules of Professional Conduct, Article VIII, Illinois Supreme Court Rules, 134 Ill. 2d 470; ABA Model Rule of Professional Conduct 1.8(f); Kling v. Landry, 686 N.E.2d 33, 39 (Ill. App. Ct. 1997) ("When in the course of his professional dealings with a client, an attorney places his personal interest above the interest of the client, the attorney is in breach of his fiduciary duty by reason of the conflict.")).

The question for us, however, is not whether Torshen acted unethically or committed legal malpractice, but rather whether this fact-laden complaint shows that, under color of state law, he conspired with others to deprive Resnick of her constitutional rights. Ironically, the fact that Torshen's alleged conflict of interest was so blatantly spelled out in the settlement agreement undercuts the complaint's conspiracy claim. Whatever scheming might have gone on here was certainly not covert.

Resnick's sec. 1983 claim as to Torshen is based on the premise that this agreement gave her nothing, gave Cicero everything, and gave at least a little something to Torshen. The first question is whether the agreement was as lopsided as she claims. If not--if she actually got

something out of the settlement--then her claim against Torshen is a nonstarter. Torshen says the second provision of the settlement allowed Resnick to serve out her term, thereby achieving the litigation's purpose. Resnick says she was entitled to serve out her term the day she was appointed and the settlement did nothing to shield her from Loren-Maltese's ongoing harassment. We might be inclined to adopt Torshen's interpretation if the agreement explicitly allowed Resnick to finish her term without interference, but the agreement contains no such language. Because all inferences must be construed in the plaintiff's favor, we treat the settlement as a sham that provided Resnick with no benefits.

The next question is whether Torshen's success in persuading his client to sign a worthless settlement agreement raises an inference that he and Cicero reached an understanding to deprive Resnick of her constitutional rights. Torshen and Cicero's representatives clearly reached an understanding that it would be advantageous for Resnick to drop her state lawsuit. Sharing the goal of having Resnick abort her state case does not necessarily translate, however, into a mutual goal of trampling upon Resnick's constitutional rights. It is true that participants need not share the same motives to share the same general conspiratorial objective. See United States v. Irwin, 149 F.3d 565, 573 (7th Cir.), cert. denied, 525 U.S. 1031 (1998). So, for instance, if Torshen's motive (allegedly ginning up some new business) differed from Cicero's motive (stifling Resnick), Torshen would still be liable if he shared with the Cicero defendants the ultimate goal of depriving Resnick of her constitutional rights. Whether characterized as motive or objective, however, the most that can be said about the allegations is that Torshen's actions do not appear to go beyond greed. Viewed favorably to the plaintiffs, Torshen wanted what apparently turned out to be lucrative legal business from a town that often finds itself in court. The settlement was the means to Torshen's pecuniary ends. But even if this is all true, the allegations fail to demonstrate a desire by Torshen to snatch away Resnick's constitutional rights.

Furthermore, the settlement of Resnick's state lawsuit is not connected to the acts underlying the sec. 1983 claim. The sec. 1983 claim is that Loren-Maltese and the Town of Cicero retaliated against Resnick for exercising her First Amendment right to speech. Resnick says the defendants were unconstitutionally squeezing her office before she filed the state lawsuit, but Torshen was not involved in any of this. Resnick

also says the defendants forced her out of office after she settled the state lawsuit, but Torshen was not involved in this, either. Resnick argues that if Torshen had done a better job of protecting her in August of 1997 she would not have lost her job in December, but that, if true, is legal malpractice, not a federal sec. 1983 claim. If the settlement agreement had foreclosed Resnick from ever filing suit against Loren-Maltese and Cicero in the future, then perhaps Torshen could be tied into an alleged conspiracy to deny Resnick her constitutional rights. The dismissal of the state lawsuit, though, did not prevent Resnick from bringing her sec. 1983 claim-- her federal case is going forward against the Cicero defendants. The nastiness that gave rise to the sec. 1983 claim took place before and after Torshen was on the scene, but he was not involved in the nastiness.

To wrap up, if these allegations against Torshen are true, i.e., that he railroaded Resnick by getting her to sign the settlement agreement and later negotiated vacation pay on her behalf when by that time he was representing the town that had just fired her, Torshen may have acted unethically or committed legal malpractice. This complaint, loaded as it is with factual allegations, does not show, however, that Torshen conspired with the Cicero defendants to deprive Resnick of her constitutional rights. We affirm the district court's dismissal of Torshen and his law firm from this case.

/1 Hanania is only a bit player in this present dispute so we'll focus on Resnick's claims as we move along.