In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-2394

MICHAEL WALSH,

*Plaintiff-Appellant,*

*v.*

DAVID HEILMANN and VILLAGE OF
OAK LAWN, ILLINOIS,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 05 C 5754—**Blanche M. Manning**, *Judge.*

---

ARGUED NOVEMBER 27, 2006—DECIDED DECEMBER 28, 2006

---

Before EASTERBROOK, *Chief Judge*, and ROVNER and
SYKES, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* After being elected Mayor
of Oak Lawn, Illinois, in 2005, David Heilmann ap-
pointed a new administrative hearing officer for the
Village. The hearing officer's post is equivalent to what
other states would call a city judge or justice of the
peace: the hearing officer adjudicates disputes under the
municipal code. Michael Walsh, who held the post be-
tween 2000 and 2005, contends in this suit under 42
U.S.C. §1983 that Heilmann replaced him because Walsh
had backed the loser in the election, and Heilmann
wanted to put his own supporters in plum positions.

According to Walsh, this violated the first amendment, as applied to political patronage in *Elrod v. Burns*, 427 U.S. 347 (1976), and its successors. But the district court dismissed the complaint after concluding that "administrative hearing officer" is the sort of position for which politics is a permissible consideration.

The district court invoked Fed. R. Civ. P. 12(b)(6), and we doubt that this is the right rule. The complaint states a recognized legal theory, after all. The court had to go beyond the complaint's allegations to make a decision. But no harm has been done by the shortcut. The duties of the position are a matter of public record, having been established by law. Oak Lawn Ordinances §11-11-1 to §11-12-7. Summary judgment need not await discovery when the material facts are undisputed. (Rule 56(b) says that a defendant may move for summary judgment "at any time . . . with or without supporting affidavits".) The statute book tells us all we need to know. Unlike job descriptions, which may bear little resemblance to a position's actual duties, the ordinance's terms are not open to contest.

The hearing officer adjudicates all citations issued under Village ordinances and regulations, unless state law commits the subject to judicial resolution. Oak Lawn Ordinances §11-11-1, §11-12-1. The hearing officer's portfolio includes not only vehicular matters (such as parking and village-sticker regulations) but also the local housing and zoning codes. The village legislature has established a schedule of fines for vehicular offenses—for example, the fine for parking in a space reserved for handicapped persons is $150, rising to $250 if not paid promptly, see Oak Lawn Ordinances §11-11-9(A)—but has left all other subjects to the hearing officer's discretion. For non-vehicular offenses the hearing officer may impose any fine up to $50,000, unless state law sets a lower cap. Oak Lawn Ordinances §11-12-2(A)(8). It is this

zero to $50,000 range, in which the hearing officer possesses considerable discretion, that led the district court to deem the position one that makes policy, and for which one's views about wise public administration (which is to say, one's politics) are an appropriate consideration. See *Branti v. Finkel*, 445 U.S. 507 (1980).

Should the Village go hard or easy on homeowners who don't trim their hedges, mow their lawns, or rake their leaves in the fall? What about people who refuse to shovel their walks when snow falls? Or who paint their houses puce? Or fail to end a nonconforming use when a zoning variance lapses? What should be done about people who leave rusting hulks in their driveways, put neon signs in residential windows, or keep 500 cats? The Mayor and Police Chief won't decide these matters; the administrative hearing officer will, by choosing levels of sanctions. Yet local political careers may turn on the answers; village mayors who can't keep neighborhoods looking neat and tidy will not last long in office. (Even a Mayor of Chicago once discovered that too much snow is fatal to a political career, and elsewhere in the Midwest the success of the fall leaf-removal campaign is the standard by which the people evaluate their mayors. See *Kupstas v. City of Greenwood*, 398 F.3d 609 (7th Cir. 2005).)

This is one reason why Andrew Jackson campaigned for making judicial posts elective and why most states to this day allow the voters a say in who holds judicial office. If the "hearing officer" could be relabeled a "judge" and made the subject of election, the first amendment does not block an elected official from appointing someone who shares his view about enforcement priorities. Just as crackdowns on drunk driving require the cooperation of the state judiciary, crackdowns on unkempt lawns and free-roaming dogs may require the cooperation of an administrative hearing officer. Neither the judge nor the

hearing officer operates in a zone where decisions are mechanical. That's why we held in *Kurowski v. Krajewski*, 848 F.2d 767, 770 (7th Cir. 1988), that politics is a permissible consideration for judicial positions (even those held for just a short time); the same is true of hearing officers who possess discretion over which laws receive how much enforcement.

Walsh would like us to believe that *Kurowski* is a sport that should be limited to appointed part-time judges when the full-time position is elected. Administrative hearing officers are different, he insists. But why should anything turn on the label? In federal practice, not even the label differs—"hearing officers" in the federal system were renamed "administrative law judges" more than 30 years ago. Although many federal ALJs have long tenure, others do not. The "administrative appeals judges" at several federal agencies serve at the pleasure of cabinet officials so that the department's administrative apparatus carries out policies adopted by the Executive Branch.

Many units of government delegate important decisions to middle management, and when they do this they may insist that the holders of the delegated power be reliable implementers of the elected officials' platforms. See, e.g., *Riley v. Blagojevich*, 425 F.3d 357 (7th Cir. 2005) (holding that assistant prison wardens in Illinois may be hired or fired on political grounds). Our situation is easier than *Riley*, for an administrative hearing officer is toward the top rather than the middle of the Village's bureaucracy. Consider two close parallels: *Pleva v. Norquist*, 195 F.3d 905 (7th Cir. 1999), holds that a member of a city's board of zoning appeals makes municipal policy and may be replaced on political grounds; *Thompson v. Illinois Department of Professional Regulation*, 300 F.3d 750 (7th Cir. 2002), holds that the

chief administrative law judge of a state agency likewise wields enough discretionary authority that the elected officials may apply political qualifications to the appointment. Both Pleva and Thompson made the sort of argument that Walsh advances: that the scope of discretion any board member or ALJ may wield is hedged about by laws that the official must respect. True enough, but each time we held that the remaining discretion is enough to make it important that the office be held by someone with elected officials' confidence.

If the people are to choose policy at the polls, the representatives they elect must be able to make enough changes in the bureaucracy to put the winning side's program into effect rather than be frustrated by a permanent officialdom with its own ideas about governance. Walsh's sponsors may return to office some day, and then it is they who will see the wisdom of allowing change in the positions where discretion is reposed.

AFFIRMED

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—12-28-06